### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO

**CASE NO. 1:22-cv-344**

**JAZMINE FOSTER-HALL,** *on Behalf of Herself*
*and All Others Similarly Situated,*

        **Plaintiff,**

**v.**

**SNOOZE HIC LLC, d.b.a. SNOOZE, AN A.M. EATERY,**

        **Defendant.**

---

### PLAINTIFF'S COLLECTIVE AND CLASS ACTION FIRST AMENDED COMPLAINT
### AND JURY DEMAND ENDORSED HEREON

---

### SUMMARY

1.     This case implicates Defendant Snooze HiC LLC, d.b.a. Snooze, an A.M. Eatery ("Defendant"), for violating the tip credit under the Fair Labor Standards Act ("FLSA") and the Colorado Wage Claim Act ("CWCA") and failing to pay Plaintiff and all similarly-situated workers their earned federally- and state-mandated minimum wages. Plaintiff brings this case as a collective action under the FLSA, 29 U.S.C. § 216(b). Plaintiff also brings this case as a class action under Rule 23 of the Federal Rules of Civil Procedure for violations of the CWCA.

2.     Defendant pays its tipped employees, including servers and baristas, below the minimum wage rate by taking advantage of the FLSA's and, in Colorado, the CWCA's, tip credit provisions. Under the tip credit provisions, an employer of tipped employees may, under certain circumstances, pay those employees less than the minimum wage rate by taking a "tip credit" against the employer's minimum wage obligations from the tips received from customers.

3.      However, the FLSA imposes strict requirements for an employer to utilize the "tip credit." *See* 29 U.S.C. 203(m). Before using the tip credit, an employer must advise an employee pursuant to FLSA section 3(m)'s provisions. *Id.* (the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection."). That is, the employer must inform the employee: (1) of the amount of the cash wage that is to be paid to the tipped employee; (2) of the amount by which the tip credit will increase the tipped employee's wages; (3) that the employee must retain all tips received except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

4.      Further, the FLSA prohibits employers from requiring tipped employees to share their tips with their employer and/or ineligible employees, such as management staff. *See Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (for "the work shifts in which salad mixers were included within the tip pool, the pooling scheme was illegal"); *Portales v. MBA Inv. Co., LLC,* No. 3:13CV00001, 2014 WL 5795206, at *3 (N.D. Ohio Oct. 16, 2014) ("When an employer includes a non-customarily tipped employee or another employer in a mandatory tip pool, the pool is invalid under FLSA." ) (citing 29 U.S.C. § 203); *Bernal v. Vankar Enter., Inc*., 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (employer not permitted to take the FLSA tip credit when it required waiters to pay for shortages and unpaid tabs).

5.      Additionally, an employer must pay the minimum statutory hourly rate ($2.13 per hour under the FLSA or the Colorado tipped minimum wage). *See* 29 U.S.C. § 203(m). The FLSA requires that employers follow any state law that establishes a higher minimum wage than that established by the FLSA. *See* 29 U.S.C. § 218(a). Therefore, federal law requires that all Colorado

employers follow the minimum wage standards set forth by Colorado law and limits the maximum allowable tip credit to three dollars ($3.00).

6.      Moreover, an employer cannot pay below the minimum wage to tipped employees and require those tipped employees to perform non-tipped work that is unrelated to the tipped occupation. *See Roussell v. Brinker Intern., Inc.,* No. 05 Civ. 3733, 2008 WL 2714079, at *12 (S.D. Tex. July 9, 2008) ("An employer may take a tip credit for an employee that works 'dual jobs,' but only for the time the employee spends working in his 'tipped employee' capacity.") (quoting 29 C.F.R. 531.56(e)); *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties…such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work."); *Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281, 1285 (10th Cir. 2017); *Osman v. Grube, Inc.,* No. 16-CV-802, 2017 WL 2908864, at *4 (N.D. Ohio July 7, 2017) (employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation).

7.      Finally, an employer cannot require its tipped employees to perform non-tipped work that is related to the employees' tipped occupation but exceeds 20 percent of the employees' time worked during a workweek. *See Marsh v. J. Alexander's, LLC,* 905 F.3d 610, 626-28 (9th Cir. 2018) (adopting 20% standard for dual jobs regulation and finding the DOL's opinion on dual jobs for tipped workers to be entitled to deference); *Fast v. Applebee's Intern., Inc.,* 638 F.3d 872, 881 (8th Cir. 2011) (granting the DOL's 20% standard deference); *Driver v. AppleIllinois, LLC*, No. 06 Civ. 6149, 2012 WL 3716482, at *2 (N.D. Ill. Aug. 27, 2012) ("An employer may take a tip credit only for hours worked by [an] employee in an occupation in which [he] qualifies as a

tipped employee."); *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (the court indirectly cast its imprimatur on the DOL's aforementioned dual-jobs regulation and Field Operations Handbook, citing both the "related to" standard in 29 C.F.R. § 531.56(e) and the 20% standard in § 30d00(e)); *Flood v. Carlson Restaurants, Inc.*, No. 13 Civ. 6458 (AT), 2015 WL 1396257 (S.D.N.Y. Mar. 27, 2015) (denying Defendant's motion to dismiss explaining that the 20% standard is a reasonable interpretation of the FLSA and ultimately granting 216(b) notice); *Ide v. Neighborhood Restaurant Partners, LLC*, No. 13 Civ. 509 (MHC), 2015 WL 11899143, at *6 (N.D. Ga. 2015) ("a reasonable interpretation of § 531.56(e) is that [Plaintiff] would be entitled to minimum wage if she spends more than twenty percent of her time performing related but non-tipped duties."); *Crate v. Q's Restaurant Group LLC*, 2014 WL 10556347, at *4 (M.D. Fla. 2014) ("the Court concludes that the 20% rule clarifies the ambiguity contained in 29 C.F.R. § 531.56(e) by delineating how much time a tipped employee can engage in related, non-tip-producing activity before such time must be compensated directly by the employer at the full minimum wage rate.").

8.    Defendant violated the FLSA and the CWCA in the following respects:

    a.    **Violation for failure to inform:** Defendant failed to correctly inform Plaintiff of its desire to rely on the tip credit to meet its minimum wage obligations. In fact, Defendant failed to inform Plaintiff of: (1) the amount of the cash wage that it intended to pay her; (2) the amount by which the tip credit would increase her wages; (3) that she must retain all tips received except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

    b.    **Violation for making illegal deductions that reduced Plaintiff's direct wage below the minimum required hourly wage for tipped employees:**

Plaintiff was required to purchase certain clothing to work for Defendant, which reduced her wages below the minimum hourly wage required for tipped employees.

c. **Violation for performing work unrelated to tipped occupation:** Plaintiff was required to perform improper types, and excessive amounts, of non-tipped work, including, but not limited to, cleaning ledges; cleaning the kitchen; cleaning walls and items hanging on the walls; cleaning window blinds, windows and windowsills; cleaning the bathrooms; and/or washing trays, appliances, silverware, dishes, and/or glasses.

d. **Violation for performing non-tipped side work in excess of 20% of the time spent working in the week**: Plaintiff was required to spend more than 20% of her time performing non-tip producing side work, including, but not limited to, cleaning and stocking the serving line; cleaning booths, chairs, high chairs and booster seats; cleaning menus; cleaning soft drink dispensers and nozzles; cleaning tables; filling and cleaning ketchup and syrup bottles; filling and cleaning salt and pepper shakers; replacing soft drink syrups; rolling silverware; setting tables; stocking ice; sweeping, cleaning and mopping floors; taking dishes and glasses from the tables to the kitchen; and/or taking out trash.

9.     Therefore, Defendant did not pay Plaintiff and all similarly situated workers the applicable federal or Colorado minimum wage, in violation of 29 U.S.C. § 206 and Colo. Rev. Stat. §§ 8-4-101, *et seq*. As a result of these violations, Defendant may not use the tip credit and must compensate Plaintiff and all similarly-situated workers at the full minimum wage rate,

5

unencumbered by the tip credit, and for all hours worked. Defendant must account for the difference between the wages paid to Plaintiff and all similarly-situated workers and the minimum wage rate.

## SUBJECT MATTER JURISDICTION AND VENUE

10.     This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), *et seq*.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to this claim occurred in this district, including many of the wrongs herein alleged.

## PARTIES AND PERSONAL JURISDICTION

12.     Plaintiff Jazmine Foster-Hall is an individual residing in Austin, Texas. Her written consent to this action is attached hereto as Exhibit "A."

13.     The FLSA Class Members are all current and former tipped employees who worked for Defendant for at least one week during the three-year period prior to the filing of this action to the present.

14.     The Colorado Class Members are all current and former tipped employees who worked for Defendant for at least one week in Colorado during the three-year period prior to the filing of this action to the present.

15.     The FLSA Class Members and the Colorado Class Members shall be collectively referred to as the "Class Members."

16.     Defendant Snooze HiC LLC is a limited liability company that conducts business in Colorado under the registered trade name Snooze, an A.M. Eatery. Defendant may be served

with process by serving their registered agent and/or authorized representative of service of process in the State of Colorado: First Meridian Holdings, LLC, 8231 East Prentice Avenue, Greenwood Village, Colorado 80111.

17.     At all times relevant to this action, Defendant has had sufficient minimum contacts with the State of Colorado to confer personal jurisdiction. Defendant conducts business throughout Colorado, contracted with and employed Colorado residents, has customers in Colorado, markets to residents of Colorado, and owns property in Colorado. Further, the wrongs this Complaint complains of occurred in Colorado.

## COVERAGE

18.     At all material times, Defendant has been an employer within the meaning of the FLSA. 29 U.S.C. § 203(d).

19.     At all material times, Defendant was an enterprise within the meaning of 29 U.S.C. § 203(r).

20.     At all material times, Defendant was an enterprise in commerce or in the production of goods for commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

21.     At all material times, Defendant has enjoyed yearly gross revenue in excess of $500,000.

22.     At all material times, Plaintiff and the Class Members were employees engaged in the commerce or the production of goods for commerce.

23.     At all material times, Plaintiff and the Class Members were employees as defined by 29 U.S.C. § 203(e) and Colo. Rev. Stat. § 8-4-101(5).

24.     At all material times, Defendant was and continues to be an "employer" as defined by 29 U.S.C. § 203(d) and Colo. Rev. Stat. § 8-4-101(6).

## FACTS

25.     Defendant operates a nationwide chain of restaurants under the trade name "Snooze A.M.". throughout the U.S., including in Colorado.

26.     The Snooze A.M. restaurants are full-service restaurants that employ servers and baristas to provide services to customers.

27.     A server gathers orders from customers and delivers food and drinks to the customers.

28.     A barista makes various beverages and serves them to customers.

29.     Defendant pays its servers and baristas less than the minimum wage under state and federal law.

30.     Defendant attempted to utilize the tip credit to meet its minimum wage obligation to its servers and baristas, including the Plaintiff and Class Members.

31.     Plaintiff worked for Defendant at the Snooze A.M. in Austin, Texas. She worked as a server and was paid less than the minimum wage allowed under federal law. She worked for Defendant from approximately September 5, 2018 through July 5, 2020.

32.     The tip credit has a harmful effect on workers that threatens the health of the economy. Adasina Social Capital, a company representing investors with more than $538 billion in assets, has issued a letter large corporations operating restaurants advising of the ills of using the tip credit. *See* https://adasina.com/investor-statement-in-support-of-ending-the-subminimum-wage/, last visited December 9, 2021. The letter states as follows:

> Tipped workers are the largest group paid a subminimum wage and represent approximately six million people in the United States. The restaurant industry by far employs the largest number of tipped workers, representing 13.6 million people.
>
> **Frozen at $2.13 per hour, a tipped subminimum wage worker can be paid as little as $4,430 per year for full-time work.** As a result, in the 42 states that allow payment of a subminimum wage, tipped workers are more

> than twice as likely to live in poverty, and the rates are even higher for
> women and people of color. The subminimum wage for tipped workers has
> risen little since it was enacted following the emancipation of slavery, a time
> when employer trade associations pushed to recoup the costs of free,
> exploited labor.

*Id*. (emphasis in original)

33.     Given the harmful effects of the tip credit, there are strict requirements that must be met by an employer how seeks to utilize the trip credit to meet their minimum wage obligations.

34.     In this case, Defendant did not satisfy the strict requirements to use the tip credit. Defendant maintained a policy and practice whereby it failed to provide the Plaintiff and the Class Members with the statutorily required notice regarding (1) the amount of the cash wage that is to be paid to the tipped employee, (2) the amount by which the wages of the tipped employee are increased on account of the tip credit, (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool, and (4) that the tip credit shall not apply to any employee who does not receive the notice.

35.     Defendant also maintained a policy and practice whereby tipped employees were required to perform non-tip producing side work unrelated to the employees' tipped occupation. As a result, Plaintiff and the Class Members were engaged in dual occupations while being compensated at the tip credit rate. While performing these non-tip generating duties, they did not interact with customers and could not earn tips.

36.     These duties include but are not limited to the following: cleaning ledges; cleaning the kitchen; cleaning walls and items hanging on the walls; cleaning window blinds, windows, and windowsills; cleaning the bathrooms; and/or washing trays, appliances, silverware, dishes and/or glasses, amongst other activities, that were not related to their tipped duties.

37.     Defendant also maintained a policy and practice whereby tipped employees were required to spend a substantial amount of time, in excess of 20 percent, performing non-tip producing side work related to the employees' tipped occupation.

38.     Specifically, Defendant maintained a policy and practice whereby tipped employees were required to spend a substantial amount of time performing non-tip producing side work, including, but not limited to: cleaning and stocking the serving line; cleaning booths, chairs, high chairs, and booster seats; cleaning menus; cleaning soft drink dispensers and nozzles; cleaning tables; filling and cleaning ketchup and syrup bottles; filling and cleaning salt and pepper shakers; replacing soft drink syrups; rolling silverware; setting tables; stocking ice; sweeping, cleaning, and mopping floors; taking dishes and glasses from the tables to the kitchen; and/or taking out trash.

39.     Further, Defendant required Plaintiff and the Class Members to perform non-tipped producing work prior to the opening of the restaurant and after the restaurant closed. Indeed, Defendant required Plaintiff and the Class Members to arrive prior to the restaurants opening for business when there were no customers and no opportunity to earn tips, to perform manual labor cleaning and setup duties. Likewise, Defendant required Plaintiff and the Class Members to remain at the restaurant after it had closed for business and there was no opportunity to earn tips, to perform manual labor cleaning duties. At times, they spent 31 minutes to two hours performing work before the restaurant was open and the same amount of time after the restaurant was closed performing non-tipped producing work.

40.     When the tipped employees performed these non-tipped duties, they usually did not interact with customers and did not have an opportunity to earn tips.

41.     Indeed, Defendant did not have a policy prohibiting tipped employees from performing certain types, or excessive amounts, of non-tipped work.

42.     Upon information and belief, Defendant did not track or record the amount of time their tipped employees spent performing non-tipped work, even though Defendant could have done so. Defendant's timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendant failed to track the specific tasks for Plaintiff.

43.     Defendant uses a point-of-sale system to record hours worked by their tipped employees. Defendant then analyzes the information collected by this system, including the labor costs at each of the restaurants. Defendant's timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendant failed to track the specific tasks for Plaintiff and the Class Members.

44.     In the point-of-sale system, Defendant can create different "clock in" codes that would allow tipped employees to record their time at the full minimum wage when performing non-tipped work.

45.     However, Defendant did not allow their servers and bartenders to clock-in at the full minimum wage rate when performing non-tipped work described in this Complaint.

46.     Moreover, Defendant violated the law by not even paying the minimum "tipped" hourly rate. Defendant required its tipped employees to pay for items for their uniform, including shirts. Defendant required these clothing items to perform work for Defendant and were primarily for Defendant's benefit and convenience. Defendant did not reimburse these items' costs.

47.     Because Defendant paid its tipped employees at the minimum of $2.13 per hour (or the state's respective tipped wage), any week in it required a tipped employee to pay for work

related expenses for Defendant's business, the employee's compensation fell below the minimum wage rate, thereby negating Defendant's entitlement to claim the tip credit.

48.     Thus, by requiring Plaintiff and the Class Members to pay for these work-related expenses, Defendant reduced their hourly rates of pay by the amount of these uniform costs. As a result, they were not even paid the minimum hourly rate necessary for Defendant to claim the tip credit.

49.     Because Defendant violated the requirements to claim the tip credit, Defendant lost the right to take a credit toward their minimum wage obligation to Plaintiff and the Class Members.

50.     As such, Plaintiff and the Class Members were not compensated at the federally mandated minimum wage.

51.     Defendant knew or should have known that its policies and practices violate the law, and Defendant has not made a good faith effort to comply with the FLSA. Rather, Defendant knowingly, willfully, and/or with reckless disregard of the law carried and continue to carry out the illegal pattern and practice regarding tipped employees. Defendant's method of paying Plaintiff was not based on a good faith and reasonable belief that its conduct complied with the law.

## REVISED FIELD OPERATIONS HANDBOOK AND NEW DUAL JOBS REGULATION

52.     On November 8, 2018, the Department of Labor issued opinion letter FLSA2018-27, which provided a standard for interpreting the dual jobs regulation that was different than the "80/20" rule that had existed at the time. However, nearly every court that considered this opinion letter has held that it was not entitled to deference. *See, e.g., Callaway v. DenOne, LLC*, No. Civ. A. 1:18-cv-1981, 2019 WL 1090346 (N.D. Ohio Mar. 8, 2019); *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976 (W.D. Miss. 2019).

53.     Therefore, the Department of Labor announced its intention to revise the dual jobs regulation found in 29 C.F.R. § 531.56(e) and issued a notice of proposed rulemaking on October 8, 2019. *See* https://www.federalregister.gov/documents/2019/10/08/2019-20868/tip-regulations-under-the-fair-labor-standards-act-flsa. After soliciting comments, the Department of Labor published its final rule on December 30, 2020, which had an effective date of March 1, 2021. (https://www.federalregister.gov/documents/2020/12/30/2020-28555/tip-regulations-under-the-fair-labor-standards-act-flsa.)

54.     After delaying the effective date of the Final Rule (https://www.dol.gov/agencies/whd/flsa/tips), on June 21, 2021, the Department of Labor announced "a notice of proposed rulemaking to limit the amount of non-tip producing work that a tipped employee can perform when an employer is taking a tip credit." (https://www.federalregister.gov/documents/2021/06/23/2021-13262/tip-regulations-under-the-fair-labor-standards-act-flsa-partial-withdrawal).

55.     After soliciting more comments, the Department of Labor announced, on October 28, 2021, the publication of a final rule (Final Rule). (https://www.dol.gov/agencies/whd/flsa/tips).

56.     Under the Final Rule, an employer cannot take a tip credit for any of the time spent by a tipped worker performing any non-tipped work that exceeds 30 minutes. That is, when a tipped worker performs non-tipped work for a continuous period exceeding 30 minutes, the employer cannot claim the tip credit.

57.     Here, Defendant illegally required Plaintiff and the Class Members to perform non-tip producing work for an excessive period. That is because Defendant required Plaintiff and the Class Members to perform non-tipped work 31 minutes to two hours before the restaurants were open for business, throughout their shifts, or after they were closed, when the restaurants did not

have customers and there was no opportunity to earn tips. During this time, Defendant paid below the minimum wage rate and forced Plaintiff and the Class Members to perform non-tip producing duties, as noted above.

58.     Given that Defendant failed to comply with the requirements to take the tip credit, Defendant has lost the ability to claim the tip credit and owes Plaintiff and the Class Members pay at the full minimum wage rate per hour for all hours they worked for Defendant.

## COLLECTIVE ACTION ALLEGATIONS

59.     Plaintiff brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all current and former tipped employees who worked for Defendant for at least one week during the three-year period prior to the filing of this action to the present.

60.     Plaintiff has actual knowledge, through conversations with co-workers, that a class of similarly situated workers exists who have been subjected to the same policies of Defendant with respect to the payment of the minimum wage.

61.     The Class Members are similarly situated to Plaintiff in that they share the same duties and were subject to the same violations of the FLSA.

62.     Like Plaintiff, the Class Members were not given proper notice of the tip credit provisions, were required to perform substantial work that was unrelated to their tip producing duties and were required to incur the same work-related expenses.

63.     Like Plaintiff, the Class Members performed similar duties and were paid under the same pay system.

64.     Plaintiff and the Class Members all labored under the same corporate structure, the same corporate policies, the same corporate chain of command, and pursuant to the rules in the same company handbook.

65.     The names and address of the Class Members of the collective action are available from Defendant's records. To the extent required by law, notice will be provided to these individuals by first class mail, email, text message, or using techniques and a form of notice similar to those customarily used in representative actions.

66.     Although the exact damages may vary among the Class Members in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

67.     As such, the class of similarly situated Class Members is properly defined as follows:

> **All current and former tipped employees who worked for Defendant at a Snooze A.M. restaurant for at least one week during the three-year period prior to the filing of this action to the present.**

## COLORADO CLASS ALLEGATIONS

68.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Colorado Class Members which is comprised of the following:

> **All current and former tipped employees who worked for Defendant at a Snooze A.M. restaurant for at least one week in Colorado during the three-year period prior to the filing of this action to the present.**

69.     <u>Numerosity</u>. The number of members in the Colorado Class is believed to exceed forty. This volume makes bringing the claims of each individual member of the Colorado Class before this Court impracticable. Likewise, joining each individual member of the Colorado Class as a plaintiff in this action is impracticable. Furthermore, the identity of the members of the Colorado Class will be determined from Defendant's records, as will the compensation paid to each of them. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Colorado Class and Defendant.

70.   <u>Typicality</u>. Plaintiff's claims are typical of the Colorado Class because like the members of the Colorado Class, he was subject to Defendant's uniform policies and practices and were compensated in the same manner as others in the Colorado Class. Plaintiff's and the Colorado Class have been uncompensated and/or under-compensated as a result of Defendant's common policies and practices which failed to comply with Colorado law. As such, Plaintiff's claims are typical of the claims of the Colorado Class. Plaintiff and all members of the Colorado Class sustained damages arising out of and caused by Defendants' common course of conduct in violation of law as alleged herein.

71.   <u>Adequacy</u>. Plaintiff is a representative party who will fairly and adequately protect the interests of the Colorado Class because it is in his interest to effectively prosecute the claims herein alleged in order to obtain the unpaid wages and penalties required under Colorado law. Plaintiff has retained attorneys who are competent in both class actions and wage and hour litigation. Plaintiff does not have any interest which may be contrary to or in conflict with the claims of the Colorado Class he seeks to represent.

72.   <u>Commonality</u>. Common issues of fact and law predominate over any individual questions in this matter. The common issues of fact include, but are not limited to:

a.   Whether Defendant properly informed Plaintiff and the Colorado Class Members of their intent to claim the tip credit;

b.   Whether more than 20% of the work performed by Plaintiff and the Colorado Class Members was non-tip generating work;

c.   Whether Plaintiff and the Colorado Class Members were required to perform more than 30 minutes of contemporaneous non-tip producing work; and

d.   Whether Plaintiff and the Colorado Class Members were subject to unlawful expense practices.

73.   The common issues of law include, but are not limited to:

a. Whether Defendants can claim the "tip credit";

b. Whether Defendants violated the CWCA;

c. Whether Plaintiff and the Colorado Class are entitled to compensatory damages;

d. The proper measure of damages sustained by Plaintiff and the Colorado Class Members; and

e. Whether Defendant's actions were "willful."

74. <u>Superiority</u>. A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even in the event any member of the Colorado Class could afford to pursue individual litigation against a company the size of Defendant, doing so would unduly burden the court system. Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the Colorado Class would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendant.

75. A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court. By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Colorado Class Members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. Notice of the pendency and any resolution of this action can be provided to the Colorado Class by mail, electronic mail, text message, print, broadcast, internet and/or multimedia publication. The identity of members of the Colorado Class is readily identifiable from Defendant's records.

76. This type of case is well-suited for class action treatment because: (1) Defendant's practices, policies, and/or procedures were uniform; and (2) the burden is on Defendant to prove

it properly compensated its employees including any potential exemptions that might apply. Ultimately, a class action is a superior form to resolve the Colorado claims detailed herein because of the common nucleus of operative facts centered on the continued failure of Defendant to pay Plaintiff and the Colorado Class Members per applicable Colorado laws.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE FAIR LABOR STANDARDS
### FAILURE TO PAY THE MINIMUM WAGE

77.     Plaintiff incorporates the preceding paragraphs by reference.

78.     This count arises from Defendant's violation of the FLSA in connection with their failure to pay the minimum wages. See 29 U.S.C. § 206.

79.     Plaintiff and the Class Members were paid hourly rates less than the minimum wage while working for Defendant.

80.     Plaintiff and the Class Members were not exempt from the minimum wage requirements of the FLSA.

81.     Defendant's failure to comply with the minimum wage requirements of the FLSA, and, in particular, the tip credit requirements, resulted in Plaintiff and the Class Members being paid less than the federal minimum wage rate. Defendant's violation of the FLSA were willful.

82.     Defendant's practice of failing to inform their employees of their intent to rely on the tip credit to meets their minimum wage obligations violates the FLSA.

83.     Defendant's failure to pay the minimum wage to Plaintiff and the Class Members, in violation of the FLSA was willful and not based on a good faith belief that their conduct did not violate the FLSA. The foregoing conduct, as alleged, constitutes a willful violation within the meaning of the FLSA. 29 U.S.C. § 255(a).

### COUNT II

### VIOLATION OF THE COLORADO WAGE CLAIM ACT
### FAILURE TO PAY THE MINIMUM WAGE

84.     Plaintiff incorporates the preceding paragraphs by reference.

85.     This count arises from Defendant's violation of the Colorado Wage Claim Act in connection with its failure to pay the minimum wages.

86.     Defendants paid Plaintiff and the Colorado Class Members below the minimum wage rate in Colorado, in violation of the Colorado Minimum Wage Orders, the Colorado Overtime & Minimum Pay Standards Orders, 7 CCR 1103-1, the Colorado Minimum Wage Act, C.R.S. § 8-6-101, *et seq*., and the Colorado Wage Claim Act, C.R.S. § 8-4-101, *et. seq*.

87.     Plaintiff and the Class Members were not exempt from the minimum wage requirements under Colorado law.

88.     Defendant's failure to comply with the minimum wage requirements of Arizona law, and, in particular, the tip credit requirements, resulted in Plaintiff and the Class Members being paid less than the Colorado minimum wage rate. Defendant's violation of Colorado law was willful.

89.     Defendant's practice of failing to inform its employees of its intent to rely on the tip credit to meets their minimum wage obligations violates Colorado law.

90.     Defendant's failure to pay the minimum wage to Plaintiff and the Class Members, in violation of Colorado law was willful and not based on a good faith belief that their conduct did not violate Colorado law.

### **WAGE DAMAGES SOUGHT**

91.     Plaintiff and the Class Members are entitled to receive the difference between the minimum wage and the tip credit adjusted minimum wage for each hour they worked.

92.     Plaintiff and the Class Members are entitled to reimbursement for all work-related

expenses they paid.

93.    Plaintiff and the Class Members are entitled to liquidated damages.

94.    Plaintiff and the Class Members are also entitled to recover their attorney's fees and costs.

## JURY DEMAND

95.    Pursuant to their rights under the Constitution of the United States, U.S. CONST. amend VII, and FED R. CIV. P. 38(a), Plaintiff hereby demands trial by jury.

## PRAYER FOR RELIEF

96.    For these reasons, Plaintiff respectfully requests that judgment be entered in her favor awarding her and the Class Members:

a.    Minimum wage compensation unadulterated by the tip credit;

b.    Liquidated damages;

c.    All misappropriated funds including all tips, expenses, and wages wrongfully withheld;

d.    An order requiring Defendant to correct its pay practices going forward;

e.    Reasonable attorney's fees, costs, and expenses of this action;

f.    Pre and post judgment interest; and

g.    Such other and further relief to which Plaintiff and the Class Members may be entitled, both in law and in equity.

Dated February 21, 2022.

RESPECTFULLY SUBMITTED BY

By: */s/ Alanna Klein Fischer*
Alanna Klein Fischer
Ohio Bar No. 0090986

Anthony J. Lazzaro
Ohio Bar No. 0077962
Lori M. Griffin
Ohio Bar No. 0085241
Matthew S. Grimsley
Ohio Bar No. 0092942
The Lazzaro Law Firm, LLC
34555 Chagrin Boulevard, Suite 250
Moreland Hills, Ohio 44022
Telephone: 216-696-5000
Facsimile: 216-696-7005
alanna@lazzarolawfirm.com
anthony@lazzarolawfirm.com
lori@lazzarolawfirm.com
matthew@lazzarolawfirm.com

And

Don J. Foty
Texas Bar No. 24050022
Hodges & Foty, LLP
4409 Montrose Blvd., Suite 200
Houston, Texas 77006
Telephone: 713-523-0001
Facsimile: 713-523-1116
dfoty@hftrialfirm.com

Attorneys for Plaintiff